NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Bankruptcy Case No. 06-16868 |
| RICHARD SCOTT ROBBINS and INBAR ROBBINS, | : | Chapter 7 |
| Debtors | : | |
| KAREN E. BEZNER, TRUSTEE OF INFORMATION EUPHORIA, L.L.C. Case No. 06-15529 | : | |
| Plaintiff, | : | |
| vs. | : | Adversary No. 06-3127 |
| RICHARD SCOTT ROBBINS and INBAR ROBBINS | : | |
| Defendants | : | **MEMORANDUM OPINION** Hearing Date: 2/28/08 & 4/2/08 |

**APPEARANCES**

Karen E. Bezner, Esquire
567 Park Avenue
Suite 103
Scotch Plains, New Jersey 07076
Attorney for Plaintiff

Barry W. Frost, Esquire
TEICH GROH
691 State Highway 33
Trenton, New Jersey 08619
Attorney for Debtors/Defendants


THE HONORABLE KATHRYN C. FERGUSON, USBJ

At the close of the Plaintiff's case, the Defendants moved to dismiss all three Counts of the Complaint on the grounds that the Plaintiff had failed to make out a prima facie case. On April 2, 2008, the Court orally issued its ruling on the Defendants' motion to dismiss and dismissed Count One except for the allegations of embezzlement; dismissed Count Two in its entirety; and declined to dismiss Count Three. The trial then commenced with the presentation of the defense. This opinion represents the Court's findings of fact and conclusions of law on the remaining Counts.

**Factual Background**

Plaintiff is the Chapter 7 trustee for Information Euphoria, L.L.C., which filed a voluntary Chapter 7 petition on June 19, 2006. Karen Bezner was appointed the Chapter 7 trustee in that case and in that capacity is the plaintiff in this adversary proceeding ("IE Trustee"). Richard and Inbar Robbins in their individual capacity filed a voluntary Chapter 7 petition on July 27, 2006.

Richard Scott Robbins was the sole officer and 95% shareholder of Information Euphoria, LLC ("IE"). Inbar Robbins held a 5% interest in IE, but was not formally employed by the company. IE was formed for the express purpose of purchasing the assets of DJS Electronics, Inc. ("DJS"). An Asset Purchase Agreement dated June 4, 2005, was entered into by Robert Bathurst as President of DJS and Richard Robbins as CEO of IE. [Ex. P-1] The recited purchase price was $900,000. The Asset Purchase Agreement allocated the purchase price as follows: $40,000 for fixed assets; $250,000 for a non-compete agreement; and $610,000 for goodwill and intangibles. [Ex. P-1; Schedule E]. The testimony indicated that there were adjustments to the purchase price that were not reflected in the $900,000 purchase price.

**Discussion**

Count One

Count One of the IE Trustee's complaint contained allegations based on 11 U.S.C. § 523(a)(4). That section provides three avenues for finding a debt nondischargeable: 1) fraud or defalcation while acting in a fiduciary capacity; 2) embezzlement; or 3) larceny. In its ruling on the motion to dismiss, this Court found that the IE Trustee had not sustained her burden with regard to the first and third avenues, but declined to dismiss with regard to the claim of embezzlement. In order to prove embezzlement, the plaintiff must show that (1) the debtor was entrusted with property or lawfully came into possession of property of another; (2) the debtor was under a prior restraint, whether written or verbal, as to the use of the property; and (3) the terms of restraint were violated by the debtor's use of the property. In re Belfry, 862 F.2d 661, 663 (8th Cir.1988). The Court has previously found that the IE Trustee made out a prima facie case of embezzlement, but that the Debtors must be given the opportunity to refute the fraudulent intent aspect.

Courts readily acknowledge that "[i]mplicit in a claim of 'embezzlement' under §523(a)(4) is a degree of fraudulent intent," but precisely what that degree is has been left to a case by case determination. In re Fuget, 339 B.R. 702, 707 (Bankr. S.D. Iowa 2006); In re Fowers, 360 B.R. 888, 899 (Bankr. N.D. Ind. 2007)("The element of fraudulent intent is a constant in federal decisions under § 523(a)(4)'s 'embezzlement' and 'larceny' prongs"). Although the burden of producing evidence is now on the Debtors, the Court remains aware that the ultimate burden of persuasion remains with the IE Trustee to prove its § 523(a)(4) claim by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 286-87 (1991); Matter of Deckar, 595 F.2d 185, 188 (3d Cir.

3

1979)(once the proponent objecting to the discharge has satisfied the initial burden of going forward, the burden of production shifts to the debtor opponent). To advance the Bankruptcy Code's fresh start policy, exceptions to discharge are strictly construed against a creditor and liberally in favor of the debtor. *See, e.g.,* In re Schlessinger, 208 Fed. Appx. 131 (3d Cir. 2006); Rosen v. Bezner, 996 F.2d 1527 (3d Cir. 1993).

The IE Trustee does not point the Court to any explicit evidence of fraudulent intent; rather, she asks the Court to infer fraudulent intent from the record as a whole. At trial, the IE Trustee presented the testimony of Trevor Krill, former owner of DJS and director of sales and marketing for IE, as well as documentary evidence including a breakdown of Owner's Discretionary Cash Disbursements as of May 13, 2006 totaling $273,141.22 [Ex. P-7]. This document is at the heart of the IE Trustee's circumstantial case for embezzlement. That breakdown showed payments made for personal expenses including credit card payments, trips to Disney World and Israel, and a time-share. The defense presented the testimony of both Richard and Inbar Robbins. Mr. Robbins explained that the discretionary cash disbursements shown on P-7 were largely personal expenses but that he ran all of his personal expenses through the company on the advice of his accountant because IE was a limited liability corporation and he did not receive a salary from the company. Mr. Robbins testified that he did not think that what he was doing was at all unusual because as part of his due diligence prior to purchasing DJS he had been shown documents that indicated that the previous owners of DJS had been drawing between $800,000 and $1.2M from the company. Mr. Robbins convincingly testified that he believed that he could successfully run the business if his discretionary cash flow was well within the range of what the previous owners took out of the company. Mr. Robbins also testified that he did not change his spending habits after he purchased

the assets of DJS and that his family maintained the same standard of living that they had previously. The testimony also revealed that Mr. Robbins sought to implement new strategies to try to increase IE's sales, expand its offerings and reduce costs. Overall, the testimony did not present a picture of Debtors who had created a corporate shell with the sole intent of denuding it of assets. That conclusion is buttressed by the fact that the Debtors paid more than the 50% of the credit card bills that they had assumed on behalf of DJS as part of the purchase agreement and made some payments toward the purchase note.

In the case of In re Fowers, 360 B.R. 888 (Bankr. N.D. Ind. 2007) the court found that the Debtor's actions met § 523(a)(4)'s definition of embezzlement. In that case, the Chapter 7 debtor (president and minority shareholder of company) had improperly diverted more than $265,000 in funds from the company. That debtor sold several vehicles that belonged to company and retained the proceeds for himself; established two "ghost" payrolls for his wife and mother-in-law, who did not provide any services to company for pay received; caused unauthorized payment to be issued to him to pay for his personal purchases and work done on his home; pocketed cash payments made by company customers and then instructed other employees to destroy the records of those transactions; and even bartered the company's services for jewelry.

The evidence of fraudulent intent in Fowers was far stronger than that presented here. There is no evidence that any of the hard assets of IE were sold off for the Debtors benefit, that any bogus payroll payments were made for the Debtors benefit, or that any effort was made to destroy any company documents which would reflect payments made on behalf of the Debtors. Quite to the contrary, it appears from the record that the Debtors were very up front about the personal expenses that were being paid through the company. While the payment of personal expenses when vendors

and employees were going unpaid is certainly not admirable, it is not evidence of an intent to siphon off funds of the company fraudulently.

The Trustee would have the Court find that the Debtors purchased the assets of DJS with the sole intent of looting the company and diverting its assets from creditors. The evidence presented at trial does not support such a conclusion. At best, what the totality of the circumstances here show are Debtors who made poor business and personal choices while running the company: There is simply not enough to establish embezzlement. That is particularly true when the IE Trustee bears the burden of persuasion and the Court must liberally construe § 523(a)(4) in favor of the Debtors.

<u>Count Three</u>

Count Three of the Complaint is predicated on § 727(a)(5), which provides that a discharge will be denied if "the Debtor has failed to explain satisfactorily ... any loss of assets or deficiency of assets to meet the debtor's liabilities." An action under § 727(a)(5) is a two-step process: the creditor must first establish a loss or deficiency of assets; and then if the creditor makes such a showing the burden switches to the debtor to provide a satisfactory explanation. <u>In re Cacioli</u>, 463 F.3d 229, 238-39 (2d Cir. 2006). In denying the motion to dismiss this count, this Court found that the IE Trustee had met her initial burden of establishing unexplained loss or deficiency of the Debtors assets, in that a portion of the assets taken from IE were in the form of cash advances or discretionary cash. The question now becomes whether the Debtors have met their burden of providing a satisfactory explanation for the use of that discretionary cash.

The standards for what constitutes a "satisfactory explanation: are a bit amorphous. *See,* NORTON BANKR. LAW & PRAC. 3d § 86:15 (2008) ("The extent and type of explanation required under [§ 727(a)(5)] is necessarily imprecise and, presumably, varies depending on the value and

6

nature of the assets involved.")  Most courts equate a satisfactory explanation with reasonableness. Those courts hold that the debtor's explanation must be "reasonable and credible so as to satisfy the court that the creditors have no cause to wonder where the assets went." In re Farouki, 133 B.R. 769, 777 (Bankr. E.D. Va.1991), *aff'd* 14 F.3d 244, 251 (4th Cir.1994); In re Hendren, 51 B.R. 781, 788 (Bankr. E.D. Tenn.1985).  Some courts add an overlay of good faith.  Those courts hold that the debtor's explanation "must convince the court of the debtor's business like conduct and good faith. The explanation must appear reasonable such that the court 'no longer wonders' what happened to the assets." In re Wolfson, 139 B.R. 279, 288-89 (Bankr. S.D.N.Y. 1992)(quoting In re Trogdon, 111 B.R. 655, 659 (Bankr. N.D. Ohio 1990).  In perhaps the most honest assessment of the subjectiveness of the standard, the Court of Appeals for the Fifth Circuit opined:

> [the word satisfactory] may mean reasonable, or it may mean that the Court, after having heard the excuse, the explanation, has that mental attitude which finds contentment in saying that he believes the explanation-he believes what the bankrupts say with reference to the disappearance or shortage. He is satisfied. He no longer wonders. He is contented.

First Texas Savings Association, Inc. v. Reed, 700 F.2d 986, 993 (5th Cir. 1983).

The definition of a reasonable explanation for § 725(a)(5) purposes is perhaps best elucidated by focusing on what it is not: it is not a justification for the use of the assets.  As one court explained, "[t]he court need only decide whether the explanation satisfactorily describes what happened to the assets, not whether what happened to the assets was proper." In re Nye, 64 B.R. 759, 762 (Bankr. E.D.N.C. 1986).  In other words, the explanation must be believable but need not be meritorious.  NORTON BANKR. LAW & PRAC. 3d § 86:15 (2008) ("Properly construed, the objection should not be sustained based on the substantive character of the explanation.")  In sum, the court's focus should be on the satisfactoriness of the debtor's explanation not on the wisdom of

the debtor's dissipation of the assets.

The focus of the IE Trustee's case was on the personal nature of the expenses the company paid on the Debtors' behalf. For example, The IE Trustee took issue with the time-share that Mr. Robbins testified was purchased as a sales incentive for employees. The IE Trustee questioned whether it had ever actually used by any employees or if anyone at the company had been consulted about the attractiveness of such a sales incentive. Such questioning misses the point; it does not matter if the purchase of a time-share was a valid business decision, it is enough that there is evidence that the money was actually used for that purpose. Similarly, the IE Trustee elicited testimony that many of the restaurant charges were for personal rather than business meals. Again, the proper question is whether those meals were actually paid for and not whether numerous restaurant meals were appropriate under the circumstances. Mrs. Robbins testified that all of the checks that were written on the IE account to her personally were not a salary but were for the family's everyday living expenses and were deposited into their account at PNC. Documentary evidence was provided to support that including the Robbins' personal check registers and bank statements.

At best for the Debtors to continue to live their previous lifestyle and to have the company pay their personal expenses when there were vendors and employees going unpaid is poor business practice, at worst it is selfish and irresponsible. As previously stated, however, it is not the Court's role to judge how the debtors spent their assets but rather to ask if there is a believable explanation for it. There is no evidence that these Debtors were hiding their use of corporate assets, the majority of the personal expenses were being paid by the company employees and there are records of those payments. The Court finds that the Debtors explanation of how the cash that was withdrawn from

the company was used is satisfactory. The Court was not left wondering were large amounts of cash had gone. Therefore, the IE Trustee has not sustained her burden of establishing a cause of action under § 7272(a)(5)[1].

## Conclusion

The IE Trustee did not sustain her burden of establishing a cause of action for embezzlement under 11 U.S.C. § 523(a)(4) or a cause of action under § 727(a)(5). Judgment is rendered in favor of the Debtors on those counts. Debtors should submit a form of order in accordance with this opinion.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge

Dated: May 12, 2008

---

[1] The IE Trustee may have been able to prove her case based on Richard Robbins' personal financial statement dated 9/1/05 [P-5]; however, a proper evidentiary foundation was not laid for that document. It is not a certified financial statement and there was no testimony regarding the circumstances under which that document was created or what purposes, if any, it was actually used for. *See, e.g.,* Hibernia Nat. Bank v. Perez, 124 B.R. 704 (E.D. La. 1991), *aff'd*, 954 F.2d 1026 (5th Cir. 1992)(A loss of assets or deficiency of assets may become apparent by comparing the debtor's schedules and statement of financial affairs with an earlier credit application or financial statement.)